# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1871

_____

United States of America,     *
    *
       Plaintiff - Appellee,     *    Appeal from the United States
    *    District Court for the Eastern
    v.     *    District of Arkansas.
    *
Felicia Marie Balentine,     *
    *
       Defendant - Appellant.     *

_____

Submitted: April 15, 2009
Filed: July 1, 2009

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Felicia Marie Balentine appeals the district court's[1] order imposing restitution. We affirm.

## I

On October 12, 2005, Balentine pleaded guilty to bank burglary in violation of 18 U.S.C. § 2113(a). On February 17, 2006, she was sentenced to 20 months

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

imprisonment.  At the sentencing hearing, a dispute arose over the amount of restitution Balentine owed.  The government argued Balentine was responsible for an $18,676 cash loss, and $8,987.84 in other damages.[2]  Balentine conceded the $18,676 cash loss, but disputed the other damages because she had not been provided documentation verifying the losses.  The district court directed the government to provide defense counsel with invoices verifying the other damages within one week, and indicated it would order restitution as soon as Balentine responded to the additional information.  Thereafter, the court imposed sentence – omitting the restitution order – and judgment was entered February 21, 2006.

The government provided the invoices as ordered and Balentine responded.  The district court, however, failed to enter a restitution order.  In February 2008, after Balentine had completed her sentence of incarceration, the probation office ordered her to begin making restitution as a condition of her supervised release.  Because no order of restitution had issued, Balentine refused and moved the district court for an order denying restitution.  Balentine argued the court no longer had authority to order restitution under the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. § 3663A-3664, because § 3664(d)(5) required the court to issue the restitution order within 90 days of sentencing.

At the motion hearing, the government withdrew its request for restitution of the related costs, but argued Balentine had admitted responsibility for the $18,676 cash loss at sentencing.  According to the government, the court had "implicitly" ordered restitution at the sentencing hearing, and the failure to enter a timely restitution order was harmless error.

---

[2]The victim sustained a monetary loss of $146,870.92, of which $128,194.92 was recovered, leaving a net cash loss of $18,676.00.

The district court found it had failed to order restitution within the 90-day period set forth under § 3664(d)(5). The court concluded, however, the 90-day time limit was subject to harmless error review, and the delay did not prejudice Balentine's substantial rights. Additionally, the district court concluded Congress' intent in passing the MVRA was to ensure crime victims were paid restitution, and strict adherence to the 90-day limit would thwart the purpose of the MVRA. Accordingly, the court denied the motion and ordered restitution.

On appeal, Balentine argues the district court erred in considering Congress' intent in passing the MVRA, because its plain language requires a restitution order be entered within 90 days of sentencing. Additionally, Balentine contends there is no basis for concluding the failure to comply with the 90-day time limit is subject to harmless error review.

II

We review the district court's interpretation of the MVRA de novo. United States v. Wilcox, 487 F.3d 1163, 1176 (8th Cir. 2007).

"Because 'federal courts possess no inherent authority to order restitution, and may do so only as explicitly empowered by statute,' we begin our analysis with the statute itself." United States v. Farr, 419 F.3d 621, 623 (7th Cir. 2005) (quoting United States v. Donaby, 349 F.3d 1046, 1048-49 (7th Cir. 2003)). The starting point for ascertaining the intended meaning of any statute is the language of the statute itself, and if the language is unambiguous, the statute should be enforced as written unless there is clear legislative intent to the contrary. United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997)). "Courts are obligated to refrain from embellishing statutes by inserting language that Congress has opted to omit." Root v. New Liberty Hosp. Dist., 209 F.3d 1068, 1070 (8th Cir. 2000).

Section 3664(d)(5) provides:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, *not to exceed 90 days after sentencing*. If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

§ 3664(d)(5) (emphasis added).[3]

The authority of a district court to order restitution beyond the 90-day limit is a matter of first impression in the Eighth Circuit. Other circuits have addressed the issue with varying results.

In United States v. Maung, 267 F.3d 1113, 1120-21 (11th Cir. 2001), the Eleventh Circuit held a district court is required to enter a restitution order within 90 days of sentencing, and refused to consider the legislative history of the MVRA

---

[3]Although § 3664(d)(5) establishes a 90-day period for the "final determination of the victim's losses" rather than referring directly to entry of the restitution order, each of the other circuits to address the issue have construed "final determination" as referring to entry of the restitution order. See United States v. Jolivette, 257 F.3d 581, 584 (6th Cir. 2001); United States v. Maung, 267 F.3d 1113, 1121 (11th Cir. 2001); United States v. Stevens, 211 F.3d 1, 4-5 (2d Cir. 2000) ("[T]he provision that a victim may 'petition the court for an amended restitution order' would have no meaning unless the order had been entered."). We agree with these decisions and construe § 3664(d)(5) as requiring entry of a restitution order within 90 days of sentencing.

because its meaning was clear.[4]  In United States v. Jolivette, 257 F.3d 581, 584 (6th Cir. 2001), the Sixth Circuit concluded the plain meaning of the statute prohibited the district court from setting the amount of restitution after the 90-day time limit had passed.  The court held "when the 90-day clock runs out, the judgment of conviction and sentence, including the restitution provision, becomes final by operation of the statute."  Id.  Similarly, the Seventh Circuit has held a district court lacks the authority to order a defendant to pay restitution more than 90 days after imposing sentence.  Farr, 419 F.3d at 624.  In Farr, the Seventh Circuit distinguished its earlier decision in United States v. Grimes, 173 F.3d 634 (7th Cir. 1999), which upheld the entry of a restitution order beyond the 90-day limit.  Id. at 625.  The court concluded "[t]he point of both Grimes and [United States v.] Zakhary[, 357 F.3d 186 (2d Cir. 2004)] is that where an illegal restitution order is vacated, § 3664(d)(5) will not always preclude the issuance of a new restitution order on remand where the original sentence was entered more than ninety days earlier."  Id.[5]

> [G]iven the clear time limit set forth in §3664(d)(5), it cannot be said that it was Congress's intent to allow district courts to order restitution at any time.  The statutory language in § 3664(d)(5) sets forth an unambiguous requirement that courts ordering restitution as a condition of supervised

---

[4]The district court cited the Eleventh Circuit as allowing the imposition of a restitution order beyond the 90-day limitation under certain circumstances.  The case relied on by the district court, however, was an unpublished decision applying a plain error standard of review.  See United States v. DeAngelis, 243 Fed.Appx. 471, 473 (11th Cir. 2007) (unpublished) cert. denied 128 S. Ct. 1097 (2008).  Thus, DeAngelis is inapposite.

[5]In Grimes and Zakhary, timely restitution orders were vacated and replaced with amended orders entered after the 90-day limit.  In this case, the original restitution order was untimely.  Thus, the circumstances permitting entry of an order outside the 90-day limit present in those cases is not present here.

release do so within ninety days of sentencing. We may not overlook the statute's plain language to further what may be a broader statutory purpose.

Id. (citation omitted).

Other circuits have concluded the 90-day limit is subject to equitable tolling if the delay in entering a restitution order is attributable to the defendant. In United States v. Dando, 287 F.3d 1007, 1011 n.5 (10th Cir. 2002), the Tenth Circuit held § 3664(d)(5) placed a 90-day limit on making a determination of the victim's losses, but was subject to equitable tolling "[w]here a defendant's own conduct delayed the timely entry of a restitution order . . . ." Id. (citing United States v. Stevens, 211 F.3d 1, 4-5 (2d Cir. 2000) (tolling the 90-day period where the defendant's purposeful misconduct caused the delay); see also Maung, 267 F.3d at 1122 ("[W]e are not willing to say that the 90-day limitation is inexorable and can never be equitably tolled."); United States v. Terlingo, 327 F.3d 216, 220, 222 (3d Cir. 2003) (holding the 90-day limitation in § 3664(d)(5) was subject to equitable tolling if the defendant's "bad faith tactics caused the delay" or if the delay is otherwise caused "in significant part by the defendant").

Finally, the Ninth and Second Circuits have applied harmless error review to violations of the 90-day limit, concluding the error is harmless unless the delay prejudiced the defendant's rights. See United States v. Cienfuegos, 462 F.3d 1160, 1163 (9th Cir. 2006); United States v. Zakhary, 357 F.3d 186, 191 (2d Cir. 2004); cf. United States v. Johnson, 400 F.3d 187, 198-99 (4th Cir. 2005) (applying harmless error review to violations of the 10-day notice rule in §3664(d)(5)); United States v. Vandenberg, 201 F.3d 805, 814 (6th Cir. 2000) (holding district court erred by failing to provide defendant an opportunity to object to amount of restitution ordered but error was harmless).

In so holding, these courts have concluded the procedural requirements of § 3664 are intended to protect victims, "not the victimizers." Grimes, 173 F.3d at 639. "[T]he purpose behind the statutory ninety-day limit on the determination of victims' losses is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather, it is to protect crime victims from the willful dissipation of defendants' assets." Zakhary, 357 F.3d at 191. Thus, "[a]bsent a defendant's clear showing that his substantial rights have been prejudiced by a § 3664(d)(5) delay, it would in fact, defeat the statutory purpose to allow a defendant to invoke this provision in order to avoid paying restitution to the victims of his crime." Id. at 192-93 (internal quotation marks and citation omitted).

The district court, following this line of decisions, concluded § 3664(d)(5)'s 90-day time provision was intended to benefit victims by ensuring district courts did not delay entry of restitution orders, thereby allowing defendants to dissipate assets. The court turned to the legislative history of the MVRA, and determined that if a violation of the 90-day time limit precluded entry of a restitution order, it would thwart the clear intent of Congress. The district court then applied harmless error review and concluded the delay did not prejudice Balentine.

Balentine argues § 3664(d)(5) clearly and expressly requires the district court to enter a restitution order within 90 days of sentencing. She contends the statutory language is unambiguous, and there is no legal basis for looking beyond the plain language to find support for application of the harmless error standard of review.

Section 3664(d)(5) unambiguously imposes a 90-day time limit on restitution orders. Further, "there is no prejudice requirement in the statute, and we are not convinced that we should read one into it." Maung, 267 F.3d at 1121. Rather, "we are governed by the language Congress enacts, not by purported designs or intentions that conflict with that language." Id. (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 452-53 (1987) (Scalia, J., concurring)). There is nothing ambiguous about directing

a district court to take a prescribed action within 90 days, and neither the district court nor our court may overlook the statute's plain language to further what may be a broader statutory purpose. The clear time limit set forth in § 3664(d)(5) reflects Congress' intent not to allow district courts to delay ordering restitution. Because the meaning is clear, we need not resort to the statute's legislative history to interpret what is meant by "not to exceed 90 days after sentencing." Nonetheless, we agree with the result reached by the district court, but conclude our analysis is guided by the Supreme Court's decision in United States v. Montalvo-Murillo, 495 U.S. 711 (1990). See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (holding we may affirm the district court on any basis supported by record).

In Montalvo-Murillo, the defendant was apprehended in New Mexico on February 8, 1989, with a large quantity of cocaine. 495 U.S. at 714-15. The defendant admitted he planned to deliver the drugs to Chicago and agreed to cooperate with Drug Enforcement Administration agents, who then took him to Chicago in an attempt to complete the delivery. Id. at 715. On February 10, after the controlled delivery fell through, the defendant was brought before a magistrate in the Northern District of Illinois for a transfer hearing before being returned to New Mexico. Id. On February 16, the defendant appeared at a detention hearing before a second magistrate. Id. The magistrate ordered a continuance, and a second detention hearing was held on February 21, where the magistrate determined the defendant was not a flight risk and ordered him released on bond. Id. at 715-16.

On review of the magistrate's order, the district court concluded the defendant should be detained because he posed a flight risk and a danger to the community, and no condition of release could assure against those contingencies. Id. at 713, 716; see also Bail Reform Act of 1984 (BRA), 18 U.S.C. § 3142(e). The district court, nonetheless, ordered the defendant released because the detention hearing had not been held in accordance with the timing provisions of the BRA, which require a detention hearing be held immediately upon a defendant's first appearance before a

judicial officer. 18 U.S.C. § 3142(f). The court of appeals affirmed, and after the defendant was released, he absconded. Id. at 716.

The Supreme Court granted certiorari to answer "whether failure to comply with the prompt hearing provisions of the [BRA] requires the release of a person who is a flight risk or a danger to other persons or the community." Id. at 713. In concluding a violation of the timing provisions did not require release, the Court noted the "vital liberty interest . . . at stake[,]" but found the BRA was "silent on the issue of a remedy for violations of its time limits." Id. at 716. "Neither the timing requirements nor any other part of the [BRA] can be read to require, or even suggest, that a timing error must result in release of a person who should otherwise be detained." Id. at 716-17. Indeed, an interpretation "that noncompliance with the time provisions . . . requires the release even of a person who presumptively should be detained . . . would defeat the purpose of the [BRA]." Id. at 717.

The Court concluded a failure to comply with the statutory time limits did not divest the government of authority to seek a defendant's detention or the court of authority to act upon such a request. Id. In reaching its conclusion, the Court rejected the argument that a failure to comply with "the time limits of the statute," vitiated all proceedings conducted thereafter. Id.

> There is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent. See French v. Edwards, 13 Wall. 506 (1872) ("[M]any statutory requisitions intended for the guide of officers in the conduct of business devolved upon them . . . do not limit their power or render its exercise in disregard of the requisitions ineffectual"). In our view, construction of the Act must conform to the "'great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided.'" Brock v. Pierce County, 476 U.S. 253, 260 (1986)

(quoting United States v. Nashville, C. & St. L.R. Co., 118 U.S. 120, 125 (1886)).

Id. at 717-18.

The "primary and overarching goal" of the MVRA "is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." United States v. Gordon, 393 F.3d 1044, 1053 (9th Cir. 2004) (internal quotations, citations, and emphasis omitted). The "intended beneficiaries" of the MVRA's procedural mechanisms "are the victims, not the victimizers." Grimes, 173 F.3d at 639. The legislative history reveals Congress' intent that the time limits in § 3664(d)(5) are not for the protection of defendants. See United States v. Cheal, 389 F.3d 35, 49 (1st Cir. 2004). The Senate Judiciary Committee considering the MVRA explicitly refused to relate the statute's procedural framework to the interest of defendants, stating the "sole due process interest of the defendant being protected during the sentencing phase is the right not to be sentenced on the basis of invalid premises or inaccurate information." S.Rep. No. 104-179, at 18 (1995), reprinted in 1996 U.S.C.C.A.N. 924, 930. Accordingly, "the purpose behind the statutory ninety-day limit on the determination of victims' losses is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather, it is to protect crime victims from the willful dissipation of defendants' assets." Zakhary, 357 F.3d at 191.

There is no dispute the district court's restitution order in this matter was entered long after § 3664(d)(5)'s 90-day time limit expired. In light of Congress' clear intent to effectuate important public policy, however, we cannot conclude the requirement that a court "shall" enter an order within 90 days was intended to divest the court of authority to order restitution if the timing provision was breached. Such an interpretation finds no support within the text of the statute, would contravene the purpose of the MVRA, and rewards defendants with a windfall at the expense of those already once victimized by their crimes. "The safety of society does not become

-10-

forfeit to the accident of noncompliance with statutory time limits where the Government is ready and able to come forward with the requisite showing to meet the burden of proof required by the statute." Montalvo-Murillo, 495 U.S. at 720; see also Barnhart v. Peabody Coal Co., 537 U.S. 149, 159 & n.6 (2003) (citing Montalvo-Murillo, 495 U.S. at 714 and quoting United States v. James Daniel Good Real Property, 510 U.S. 43, 63 (1993) ("[I]f a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.")); and United States v. Dolan, No. 08-2104, 2009 WL 1464814, *7 (10th Cir. May 27, 2009) (holding the untimely issuance of a restitution order does not divest the district court of its authority to impose restitution, because "the MVRA's deadline seeks to spur prompt restitution orders, not spurn belated ones . . . .").

We do not, and need not, decide today what, if any, remedies may be available to a defendant actually harmed by a district court's failure to abide by § 3664(d)(5)'s timing provisions. Balentine does not contend that entry of the untimely restitution order impeded her ability to dispute the amount of restitution claimed by the government. Thus, in this instance, "it is clear that the noncompliance with the timing requirement had no substantial influence on the outcome of the proceeding." Id. at 723.

III

The judgment of the district court is affirmed.

_____

-11-