# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-1914

———————————————

United States of America

*Plaintiff - Appellee*

v.

George Thunderhawk

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of North Dakota - Bismarck

——————————

Submitted: February 7, 2017
Filed: June 21, 2017

——————————

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

——————————

LOKEN, Circuit Judge.

In 2014, a jury found George Thunderhawk guilty of abusive sexual contact of V.R.B., a child under 12 years of age, in violation of 18 U.S.C. § 2244(a)(5). At sentencing, V.R.B.'s mother testified in support of restitution for the victim's medical expenses. The Presentence Investigation Report ("PSR") stated that

restitution is mandatory for Thunderhawk's offense. The district court[1] noted that restitution was owed and scheduled a hearing sixty days after sentencing to determine the amount to be awarded. Before that hearing, Thunderhawk appealed, which stayed proceedings in the district court. In September 2015, we affirmed the conviction and sentence. United States v. Thunderhawk, 799 F.3d 1203 (8th Cir. 2015). After our mandate issued, the district court *sua sponte* scheduled the restitution hearing and subsequently ordered Thunderhawk to pay $14,967.47 in restitution for V.R.B.'s medical expenses. Thunderhawk appeals the restitution order, arguing (1) the district court lacked authority to order restitution after failing to determine the award within ninety days of sentencing, as 18 U.S.C. § 3664(d)(5) requires; (2) the government failed to prove Thunderhawk's offense proximately caused V.R.B.'s loss; and (3) the court erred in failing to order nominal periodic restitution payments because Thunderhawk is indigent. We affirm.

**(1).** Restitution is mandatory for the offense of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(5). See 18 U.S.C. §§ 2248(a), (b)(4). The order of restitution "shall be issued and enforced in accordance with [18 U.S.C. §] 3664 in the same manner as an order under [the Mandatory Victim Restitution Act, 18 U.S.C. §] 3663A." § 2248(b)(2).

At Thunderhawk's sentencing, V.R.B.'s mother, Lillian Plenty Chief, testified that V.R.B. had incurred significant medical expenses as a result of Thunderhawk's offense. The district court advised the parties, "obviously there's some restitution that's owed in this case" and scheduled a hearing to determine the amount of restitution to be held sixty days after the sentencing hearing. Before the restitution hearing, Thunderhawk appealed. The district court issued an order cancelling the hearing and staying final resolution of the restitution issue. On February 4, 2016,

---

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

after our mandate issued, the court *sua sponte* scheduled the hearing for February 29. After a status conference, the court canceled the hearing, finding no need for testimony in addition to that presented at sentencing but providing the parties ten days to submit additional evidence. The court then entered the restitution order being appealed.

Thunderhawk argues the district court lost authority to order restitution when it failed to comply with § 3664(d)(5): "If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." In Dolan v. United States, 560 U.S. 605, 611 (2010), the Supreme Court held that "the fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution." The Court stated that this rule applies "at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." Id. at 608. Seizing on this caveat, Thunderhawk argues that Dolan should not apply because the district court in this case did not make the initial determination that restitution was owing until more than ninety days after sentencing.

In Dolan, the plea agreement stated that restitution "may be ordered," the presentence report noted that restitution was required, and the district court's judgment provided that "restitution is applicable" but was not ordered "at this time" because the court had no information regarding "payments that may be owed." Id. at 608. Here, the district court noted "obviously there's some restitution that's owed in this case" but kept "the subject of restitution open for a period of 60 days" to give the parties an opportunity to submit memoranda and additional medical evidence on the amount that should be owed. During those sixty days, Thunderhawk appealed, depriving the court of jurisdiction to proceed while the appeal was pending and

arguing unsuccessfully on appeal that "restitution is criminal punishment [that] must be proved to a jury under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000)." <u>Thunderhawk</u>, 799 F.3d at 1209. We conclude that the holding in <u>Dolan</u> that the district court retained *power* to order restitution clearly applies. <u>See</u> <u>United States v. Adejumo</u>, 848 F.3d 868, 870 (8th Cir. 2017). Because Thunderhawk was on notice the court would order restitution and does not argue he was prejudiced by delay, the district court did not abuse its discretion in awarding restitution. <u>See</u> <u>United States v. Zaic</u>, 744 F.3d 1040, 1044 (8th Cir. 2014); <u>United States v. Chalupnik</u>, 514 F.3d 748, 752 (8th Cir. 2008) (standard of review); 18 U.S.C. § 2248(b)(4).

**(2).** Thunderhawk next argues that the government failed to meet its burden to prove that his offense was the proximate cause of V.R.B.'s medical bills. The statute provides that the order of restitution "shall direct the defendant to pay . . . the full amount of the victim's losses," determined in accordance with § 3664. 18 U.S.C. § 2248(b)(1), (2). The full amount of the victim's losses for Thunderhawk's sex offense included "medical services relating to physical, psychiatric, or psychological care." § 2248(b)(3)(A).[2] Section 3664(e) provides that the government has the burden to demonstrate by a preponderance of the evidence "the amount of the loss sustained by a victim as a result of the offense." The offense must have proximately caused the victim's losses. <u>See</u> <u>Paroline v. United States</u>, 134 S. Ct. 1710, 1720-21 (2014); § 2248(b)(3)(F).

Thunderhawk assaulted V.R.B. in 2008. At trial, V.R.B. testified that she did not report the assault until 2013 because she was scared to tell anyone it happened and believed the assault was her own fault. At sentencing, V.R.B. submitted a victim

---

[2]When the victim of a sex offense is under 18 years of age, such as V.R.B., the "victim" for restitution purposes is defined to include her legal guardian, here, Lillian Plenty Chief. 18 U.S.C. § 2248(c).

impact statement stating that, since reporting the assault, she has been hospitalized two times for attempted suicide, two other times for psychological issues, and has been prescribed medication to help her sleep. V.R.B.'s mother, Lillian Plenty Chief, testified that V.R.B. has harmed herself by cutting her stomach, cutting her wrists, and attempting suicide, problems that started after V.R.B. reported the assault. Plenty Chief provided a victim impact statement detailing V.R.B.'s psychological issues and diagnoses of post-traumatic stress disorder, severe depression, and high anxiety. She also submitted a Financial Impact Statement listing a total of $14,967.14 in "crime related" medical costs for which Plenty Chief was responsible.[3] Copies of the medical bills were included with the PSR.

Thunderhawk argued that V.R.B. faced other difficulties that might have contributed to her hospitalizations and treatment five and six years after the assault. Her father died from alcohol abuse in 2009. Plenty Chief had problems with alcohol abuse, and at times was not home for V.R.B., who attended boarding school because she was having trouble at her local school. Noting that it "carefully reviewed the entire record, a transcript of the sentencing hearing in which testimony was submitted regarding restitution, the parties' filings, and relevant case law," the district court found by a preponderance of the evidence that Thunderhawk's offense proximately caused V.R.B.'s medical expenses. We review that finding for clear error. See Chalupnik, 514 F.3d at 752.

On appeal, Thunderhawk argues that, given the lapse of time between his assault and the medical expenses at issue, the government could not meet its burden absent medical records or expert testimony from either a psychiatrist, psychologist, or social worker showing a causal relationship between the crime and the medical services V.R.B. received. The district court correctly noted that it could rely on

---

[3]The district court ordered restitution to Plenty Chief in the amount of $14,967.47, consistent with the sentencing transcript, PSR, and filed medical bills.

victim testimony in calculating provable loss. See United States v. Emmert, 825 F.3d 906, 911 (8th Cir. 2016), cert. denied, 137 S. Ct. 1349 (2017). "[T]he government may meet its burden of proof by introducing . . . a sworn statement from the victim outlining the losses sustained as a result of the crime." United States v. Adetiloye, 716 F.3d 1030, 1039 (8th Cir. 2013) (citation omitted), cert. denied, 134 S. Ct. 1775 (2014). Here, Thunderhawk did not take advantage of the district court's decision to delay a final decision on the amount of restitution to give the parties an opportunity to submit additional evidence on the question of causation. Absent contrary evidence from Thunderhawk, Plenty Chief's testimony under oath, combined with the other record evidence, was sufficient to meet the government's burden. The district court did not clearly err in determining Thunderhawk owed the full amount of restitution Plenty Chief requested.

**(3).** Finally, Thunderhawk argues his economic circumstances warranted nominal restitution payments. Thunderhawk urged the district court to order nominal payments, arguing his economic circumstances prohibited him from paying the full restitution award in the foreseeable future. Citing the PSR, he noted that "he has no assets or liabilities, and he was financially supported by his wife's $800 per month social security check." Thunderhawk asserted that he could not receive social security benefits while incarcerated and likely would not receive them upon release.

A district court "may not decline to issue an order [of restitution] under this section because of . . . the economic circumstances of the defendant." 18 U.S.C. § 2248(b)(4)(B); see § 3664(f)(1)(A) ("the court shall order restitution . . . in the full amount of each victim's losses . . . without consideration of the economic circumstances of the defendant"). However, after determining the full amount owed, the court "shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid," taking into account the defendant's financial resources, projected earnings, and financial obligations. 18 U.S.C. § 3664(f)(2); see United States v. Gray, 175 F.3d 617, 618 (8th Cir.) (per

-6-

curiam), <u>cert. denied</u>, 528 U.S. 909 (1999).  The court may order the defendant to make a lump-sum payment or partial payments, § 3664(f)(3)(A).  In addition, § 3664(f)(3)(B) provides:

> A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

The district court's Amended Judgment in a Criminal Case (a standard form judicial document) provided that Thunderhawk "must make restitution" to Lillian Plenty Chief in the amount of $14,967.47.  The Schedule of Payments section specified that the district court, "[h]aving assessed the defendant's ability to pay, [orders that] payment of the total criminal monetary penalties is due as follows."  The district court checked Box A, which provided: "Lump sum payment of $15,067.47 [which includes the $100.00 special assessment] due immediately, balance due . . . in accordance [with] F below."  The special instructions entered in Box F are that, "[w]hile on supervised release, the Defendant shall cooperate with the Probation Officer in developing a monthly payment plan consistent with a schedule of allowable expenses provided by the Probation Office."

We have emphasized that the statute imposes the duty on the *court* to specify the restitution payment schedule.  It may not delegate that function to the Bureau of Prisons or to the Probation Office.  <u>See</u> <u>United States v. McGlothlin</u>, 249 F.3d 783, 785 (8th Cir. 2001).  Here, the district court did not shirk that duty, although the ambiguous Judgment form does not fit readily with the requirements of § 3664(f)(3).  As we read the form, unless the court invokes the nominal payment provision in § 3664(f)(3)(B), the full restitution amount is immediately due and payable because otherwise there would be no debt to pay for a defendant who acquires the ability to

pay while incarcerated, for example. But checking Box A on the form does not elect the statute's "lump sum payment" option *when* the district court also checks Box F and enters "Special Instructions" that specify a schedule of payments. Here, given Thunderhawk's apparent inability to pay restitution while incarcerated, and uncertain ability to pay restitution when he commences supervised release, the district court sensibly directed Thunderhawk and the Probation Office to develop a suitable schedule of payments when he is released. But that payment plan will be subject to judicial review and approval. See generally United States v. Sawyer, 521 F.3d 792, 796-97 (7th Cir. 2008), cert. denied, 555 U.S. 1103 (2009).

We further conclude the district court did not abuse its discretion or clearly err in determining that Thunderhawk's economic circumstances, while uncertain, are not so dire as to warrant a finding that they "do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments," as § 3664(f)(3)(B) requires. Construing that provision narrowly serves the basic purposes of restitution – "that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims." Paroline, 134 S. Ct. at 1729.

The Amended Judgment of the district court is affirmed.

_____